IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

UNITED STATES OF AMERICA                              PLAINTIFF/RESPONDENT

V.                          Criminal No. 2:13-cr-20032-PKH-MEF-1
                            Civil No. 2:18-cv-02023-PKH-MEF

MAURO GONZALES                                    DEFENDANT/PETITIONER

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Defendant/Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody filed on February 5, 2018. (ECF No. 38). The United States filed its response on March 6, 2018. (ECF No. 42). Defendant/Petitioner filed a reply on March 22, 2018. (ECF No. 43). The matter is ready for report and recommendation.

### I. Background

On June 5, 2013, an Indictment was filed alleging that Defendant/Petitioner, Mauro Gonzales ("Gonzales"), did knowingly and intentionally combine, conspire, confederate and agree with others to distribute a controlled substance, namely, a mixture or substance that contained methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846. (ECF No. 1). After being arrested in the Northern District of Texas on September 14, 2016, Rule 5 proceedings were conducted on September 28, 2016, and Gonzales was ordered to be detained and transported to appear before this Court. (ECF No. 6).

Gonzales made his initial appearance before the Hon. Erin L. Setser (now Wiedemann), United States Magistrate Judge, on October 24, 2016, where he waived the issue of detention. (ECF No. 8). Patrick F. Flake, a Criminal Justice Act panel attorney, was appointed to represent Gonzales.

-1-

(ECF No. 8 and Text Only Order entered October 24, 2016).  Retained counsel, Steven H. Kay,

entered an appearance on behalf of Gonzales on October 31, 2016 (ECF No. 12), and the Court

permitted Mr. Flake to withdraw (Text Only Order entered November 2, 2016).

On February 6, 2017, Gonzales appeared with counsel before the Hon. P. K. Holmes, III,

Chief United States District Judge, for a change of plea hearing.  (ECF No. 17).  A written Plea

Agreement was presented to the Court, and Gonzales pleaded guilty to the one count Indictment

charging him with conspiracy to distribute methamphetamine.  (ECF No's. 17, 18).  The Court

approved the Plea Agreement and ordered a Presentence Investigation Report ("PSR").  (ECF No.

17).

An initial PSR was prepared by the United States Probation Office on May 5, 2017.  (ECF

No. 19).  On May 12, 2017, the Government advised that it had no objections to the PSR.  (ECF No.

20).  On May 19, 2017, Gonzales advised that he had no objections to the PSR.  (ECF No. 22).

On May 25, 2017, a final PSR was submitted to the Court.  (ECF No. 23).  The final PSR

determined that Gonzales was accountable for 2,052.8 grams of actual methamphetamine and 3,360

grams of a mixture of methamphetamine, which all converts under the Guidelines to a total of 47,776

grams of marijuana equivalent.  (ECF No. 23, ¶¶ 35-38).  Based on that drug quantity, Gonzales'

Base Offense Level was determined to be 36.  (ECF No. 23, ¶ 43).  This was increased four levels

for Gonzales' aggravating role in the offense as an organizer or leader of a criminal activity that

involved five or more participants or was otherwise extensive (Doc. 23, ¶¶ 38, 46), resulting in an

Adjusted Offense Level of 40 (ECF No. 23, ¶ 48).  After a three-level reduction for acceptance of

responsibility, Gonzales' Total Offense Level was determined to be 37.  (ECF No. 23, ¶¶ 50-52).

Gonzales had a criminal history score of zero, placing him in Criminal History Category I.  (ECF No.

23, ¶ 60).  The statutory maximum term of imprisonment for the offense of conviction is 20 years.
(ECF No. 23, ¶ 83).  Based upon a Total Offense Level of 37 and a Criminal History Category of I,
Gonzales' advisory Guidelines range was determined to be 210 to 262 months imprisonment;
however, since the statutorily authorized maximum sentence of 20 years is less than the maximum
of the Guidelines range, the applicable Guidelines range was adjusted to 210 to 240 months.  (ECF
No. 23, ¶ 84).

Gonzales appeared for sentencing on July 26, 2017.  (ECF No. 25).  The Court made inquiry
that Gonzales was satisfied with his counsel; the PSR was reviewed and adopted; Gonzales and his
counsel were afforded the opportunity to speak and make a statement; and, the Court then imposed
a Guidelines sentence of 235 months imprisonment, three years supervised release, no fine, and a
$100.00 special assessment.  (ECF No. 25).  Judgment was entered by the Court on July 28, 2017.
(ECF No. 26).

On August 4, 2017, retained counsel, Franklyn Mickelson, entered an appearance on behalf
of Gonzales.  (ECF No. 29).  Through his retained counsel, Gonzales timely filed a direct appeal
from the Judgment.  (ECF No. 30).  Gonzales subsequently filed a motion to dismiss his appeal, his
counsel stating that after reviewing the record with Gonzales it was determined that there were no
non-frivolous issues to raise on appeal.  (Appellate Case No. 17-2709, Motion to Dismiss filed
September 18, 2017).  The Eighth Circuit Court of Appeals granted the motion to dismiss on
September 19, 2017 (ECF No. 37-1), and the Court's Mandate was issued on the same date (ECF
No. 37).

On February 5, 2018, Gonzales filed his *pro se* Motion Under 28 U.S.C. § 2255 to Vacate,
Set Aside, or Correct Sentence by a Person in Federal Custody (the "motion").  (ECF No. 38).  The

-3-

motion alleges three grounds for relief[1], summarized as follows: (1) plain error was committed when the Court misapplied the guidelines providing a four-level enhancement for a leader/organizer; (2) ineffective assistance of counsel for failing to object to the four-level enhancement for a leader/organizer; and, (3) ineffective assistance of counsel for failing to argue for a downward variance under the factors of 18 U.S.C. § 3553(a).  (ECF No. 38, pp. 4-5; ECF No. 39).

The United States' response to the motion was filed on March 6, 2018.  (ECF No. 42). Gonzales filed a reply on March 22, 2018.  (ECF No. 43).

## II. Discussion

"A prisoner in custody under sentence . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).  "If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).  A thorough review of Gonzales' motion and the files and records of this case conclusively shows that Gonzales is not entitled to relief, and the undersigned recommends the

---

[1] Gonzales' Petition only alleges the first two grounds, but his Memorandum of Law sets forth the third ground.  (ECF No. 39, pp. 7-11).

denial and dismissal of his motion with prejudice without an evidentiary hearing.

### A. Gonzales' Guidelines Claim is Procedurally Defaulted

The Government argues that Gonzales' claim that the Court misapplied the Sentencing Guidelines to impose a four-level enhancement for a leader/organizer is procedurally defaulted and cannot be raised in a § 2255 motion.  (ECF No. 42, pp. 3-7).  The undersigned agrees.

The United States Supreme Court has "long and consistently affirmed that a collateral challenge may not do service for an appeal."  *United States v. Frady*, 456 U.S. 152, 165 (1982) (internal citations omitted).  Relief under § 2255 "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice."  *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).  The circumstances under which a guilty plea may be attacked on collateral review are strictly limited, and "[i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked."  *Mabry v. Johnson*, 467 U.S. 504, 508 (1984).  Even the voluntariness and intelligence of a guilty plea can be attacked on collateral review *only* if first challenged on direct review, as "[h]abeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'"  *Bousley v. United States*, 523 U.S. 614, 621 (1998) (internal quotation marks and citation omitted).  "[T]he concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas."  *Id.*

In this case, Gonzales knowingly and intelligently pleaded guilty to the conspiracy to distribute methamphetamine charged in the Indictment.  He does not challenge the voluntary nature of his guilty plea in these collateral proceedings.  Instead, he argues that the four-level enhancement

imposed for his role as an organizer or leader of a criminal activity that involved five or more participants, or which was otherwise extensive, was a misapplication of the Sentencing Guidelines by the Court at sentencing. After initially filing a notice of appeal, Gonzales later voluntarily dismissed his appeal. By dismissing his appeal, Gonzales has procedurally defaulted the guidelines misapplication claim he now raises.

This procedural default may be excused only if Gonzales "can show both (1) a cause that excuses the default, and (2) actual prejudice from the errors that are asserted." *Matthews v. United States*, 114 F.3d 112, 113 (8th Cir. 1997) (quoting *Bousley v. Brooks*, 97 F.3d 284, 287 (8th Cir. 1996)); *Apfel*, 97 F.3d at 1076; and, *Frady*, 456 U.S. at 167-68. "For cause to exist, the external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497 (1991).

Gonzales makes no such showing here, nor could he. Gonzales argues that he admitted to "being a buyer and seller of methamphetamine," but that such activity does not establish that he was an organizer or leader of the criminal activity. (ECF No. 39, p. 3-4). He further argues that there were only four individuals involved in his conspiracy. (ECF No. 39, p. 4). In his reply, Gonzales argues that he was merely "a middle-man between the supplier of the drugs in Mexico and the head of the DTO, Gamboa," and that the four-level enhancement "intended by Congress for king-pins is purely unreasonable." (ECF No. 43, p. 4). The factual basis for his guidelines claim was, therefore, clearly known to Gonzales in time to challenge the four-level enhancement at sentencing and on direct appeal. Gonzales, however, made no objection to the four-level aggravating role enhancement under U.S.S.G. § 3B1.1(a) reported in the PSR (ECF No. 23-1), and he voluntarily dismissed his

appeal because "there were no non-frivolous issues to raise on appeal" (Appellate Case No. 17-2709, Motion to Dismiss filed September 18, 2017).

In his reply, Gonzales suggests "there is an implied causation and attendant prejudicial effect" because "[i]f plain error exists then it is inherently demonstrative of ineffective assistance of counsel (cause), and plain errors that impact a movant's sentence by as little as a single day of imprisonment [are] presumptively prejudicial ..."  (ECF No. 43, p. 2).  Notably, Gonzales cites no legal authority recognizing "implied causation," and he makes no assertion that the factual basis for his claim was reasonably unavailable to him or that some interference by government officials, or other external impediment, prevented him from raising his guidelines misapplication claim on direct appeal.  As such, his argument regarding "implied causation" necessarily fails.

Since Gonzales has not shown adequate cause to overcome the procedural bar in his case, the Court need not consider the issue of actual prejudice.  *Ashker v. Class*, 152 F.3d 863, 871 (8th Cir. 1998) (citing *Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982)).  Moreover, Gonzales neither claims nor demonstrates miscarriage of justice through actual innocence.  "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."  *Schlup v. Delo*, 513 U.S. 298, 316 (1995).

Beyond the procedural bar, guidelines interpretation claims are simply not cognizable under § 2255.  Few sentencing errors are of a constitutional nature that can support a § 2255 claim.  *See, e.g., Sawyer v. Whitley*, 505 U.S. 333, 348-50 (1992).  *Sawyer* has been limited to capital cases, and allegations of sentencing guidelines errors are not cognizable under § 2255 unless the sentence imposed exceeds the statutory maximum.  *See Sun Bear v. United States*, 644 F.3d 700, 708 (8th Cir.

2011) (en banc) (citations omitted) (§ 2255 does not apply to garden-variety Sentencing Guideline application issues); *Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995) (ordinary questions of guideline interpretation falling short of the "miscarriage of justice" standard do not present a proper § 2255 claim).  Here, Gonzales' sentence of 235 months imprisonment falls within the statutory maximum sentence of 20 years provided by 21 U.S.C. § 841(b)(1)(C).  Accordingly, Gonzales' guidelines misapplication claim is not cognizable in this § 2255 proceeding.

Gonzales has failed to demonstrate "cause and prejudice" or a "miscarriage of justice" to overcome his procedural default of the guidelines claim he now asserts.  His guidelines claim is procedurally barred and is otherwise not cognizable in this § 2255 proceeding.  His first ground for relief should be denied.

### B.  Defense Counsel's Performance Was Not Deficient

Gonzales next claims that his defense counsel was ineffective for failing to object to the alleged misapplication of the Sentencing Guidelines.  The Government argues there was abundant evidence to support the four-level enhancement for Gonzales' role in the offense, and that counsel's failure to object to the enhancement does not constitute constitutionally deficient performance.

### 1.  Legal Standard for Ineffective Assistance of Counsel Claims

To prove a claim of ineffective assistance of counsel, a criminal defendant must demonstrate both that counsel's performance was deficient, and that counsel's deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the deficient performance prong of the *Strickland* test, one must show that counsel's representation fell below the "range of competence demanded of attorneys in criminal cases."  *Id*. at 688.  Review of counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance. *Id*. at 689. Moreover, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 690). Courts also "do not use hindsight to question counsel's performance," but instead must analyze it according to counsel's situation at the time of the allegedly incompetent act or omission. *Kenley v. Armontrout*, 937 F.2d 1298, 1303 (8th Cir. 1991). If one fails to establish deficient performance by counsel, the court need proceed no further in its analysis of an ineffective assistance of counsel claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003).

To establish the prejudice prong of the *Strickland* test, one must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The United States Supreme Court has clarified that the proper prejudice analysis is whether "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) (quoting *Strickland*, 466 U.S. at 687).

### 2. Failure to Object to Aggravating Role Adjustment at Sentencing

Finding that Gonzales "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive," the PSR assessed a four-level enhancement pursuant to USSG § 3B1.1(a) for Gonzales' role in the offense. (ECF No. 23, ¶ 46). The PSR reported three related cases, involving Gerardo Gamboa, Miguel Gonzalez, and Ana Esparza (ECF No. 23, p. 1), and it noted that other than Gamboa, Gonzalez and Esparza "no additional associates were believed to be directly related to the defendant's conduct" (ECF No. 23, p. 5 n.1). The PSR also reported that in mid-March 2013 Gamboa sent Esparza to the Dallas, Texas area to retrieve

approximately three pounds of meth, which agents later learned was purchased from Gonzales' associate, believed to be Carlos Saucedo, and that Esparza delivered $16,000 to Saucedo at Esparza's parents' house located at 2408 Gilbert Circle, Arlington, Texas, which was the same address for Gonzales. (ECF No. 23, ¶ 20). As for Gamboa, the PSR reported that agents identified 22 customers/associates, and that Gamboa and his associates were convicted on drug-related charges in the Western District of Arkansas in cases 2:13-cr-20037-001-014 and 2:13-cr-20041-001-009. (ECF No. 23, ¶ 16).

Defense counsel made no objections to the PSR. (ECF No. 22; ECF No. 23-1). "A fact in a PSR to which the defendant has not specifically objected is a fact admitted by the defendant." *See United States v. Abrica-Sanchez*, 808 F.3d 330, 334 (8th Cir. 2015) (quoting *United States v. White*, 447 F.3d 1029, 1032 (8th Cir. 2006)).

Gonzales now argues that the failure to object to the four-level enhancement for his role in the offense constitutes deficient performance because "the PSR clearly states there [were] only three people in addition to Gonzales involved in his conspiracy." (ECF No. 39, p. 6). Gonzales further argues that his conduct, i.e., buying and selling drugs, negotiating price, collecting money, and even directing the recipients of the drugs to sell them quickly, does not support a finding that he was a leader or organizer of the criminal activity. (ECF No. 39, p. 7). Finally, Gonzales contends that he was a mere middleman, rather than a leader or organizer, and that the volume of drug transactions involved in the conspiracy was "relatively small." (Id.). In response, the Government argues there can be no deficient performance on the part of defense counsel because application of the four-level enhancement pursuant to USSG § 3B1.1(a) was proper in this case. (ECF No. 42, p. 10).

For the § 3B1.1(a) enhancement to apply, a defendant must, first, lead or organize at least one

-10-

other participant in the criminal activity, and second, the criminal activity must involve at least five participants or must be "otherwise extensive." *United States v. Adetiloye*, 716 F.3d 1030, 1037 (8th Cir. 2013). When a Court considers whether a defendant is an organizer or leader, it considers the following non-exclusive set of factors:

> "[T]he exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." *Id*.

The terms "organizer" and "leader" are interpreted broadly. *Id*. (internal citation omitted). The Government must prove a leadership enhancement is warranted by a preponderance of the evidence. *United States v. Garcia-Hernandez*, 530 F.3d 657, 665 (8th Cir. 2008).

In the present case, the admission of the factual basis in support of Gonzales' guilty plea provides the necessary proof to support application of the enhancement. By signing the written Plea Agreement, Gonzales acknowledged that he had fully discussed with defense counsel the facts of the case and the elements of the crime to which he was pleading guilty, and he admitted there was a factual basis for his guilty plea. (ECF No. 18, ¶ 2). First, the admitted facts demonstrate that Gonzales lead or organized at least one other participant in the criminal activity. The true and undisputed facts show that over 40 phone calls between Gonzales and Gamboa were intercepted that related to the distribution of methamphetamine. (ECF No. 18, ¶ 2(c)). Gonzales admitted he was a source of supply for Gamboa, and he arranged the purchase of methamphetamine from Mexico and the transport of the methamphetamine to Gamboa in the Fort Smith, Arkansas area. (ECF No. 18, ¶ 2(c)). Gonzales requested payment from Gamboa, and he inquired as to how much money Gamboa

had collected toward the drug debt owed.  (Id.).  He talked to Gamboa about the amount of methamphetamine available and when it would be ready for Gamboa or another associate to pick up in the Dallas, Texas area.  (Id.).  Gonzales admitted that in one phone conversation he directed Gamboa to sell the methamphetamine quickly so that Gamboa could pay his drug debt to Gonzales, and he specifically directed Gamboa to have Gamboa's wife pay a man $1,000 to help move things along.  (ECF No. 18, ¶ 2(d)).  The intercepted calls also confirmed that Gonzales controlled the price charged to Gamboa for the methamphetamine, and that Gonzales controlled the specific details for the delivery or transport of the methamphetamine to Gamboa.  (Id.).

Next, the admitted factual basis establishes that the criminal activity involved at least five participants or was otherwise extensive.  The five-participant requirement "does not necessarily mean five or more persons under [Gonzales'] direction but, instead, five persons (including [Gonzales]) involved in the overall crime, only one of whom need have been under [Gonzales'] direction."  *United States v. Rodriguez*, 112 F.3d 374, 377 (8th Cir. 1997) (internal citations omitted).  During the wire and electronic interceptions, over 20 associates involved in the distribution of methamphetamine with Gamboa were identified.  (ECF No. 18, ¶ 2(b)).  In assessing whether an organization is "otherwise extensive," all persons involved during the course of the entire offense are to be considered.  USSG, § 3B1.1, Application Note 3.  In addition to the instant case, Gamboa and 22 of his associates were convicted on drug-related charges in 2:13-cr-20037-001-014 and 2:13-cr-20041-001-009.  (ECF No. 23, ¶ 16, note 1).

Large quantities of methamphetamine were involved in the overall conspiracy, including approximately five pounds being transported by Gonzales' associate, Gamboa, on May 20, 2013 (ECF No. 18, ¶ 2(d)), and a total of 2,052.8 grams of actual methamphetamine and 3,360 grams of

-12-

a mixture of methamphetamine (ECF No. 23, ¶ 35) being attributed to Gonzales.  The criminal activities of the overall methamphetamine distribution conspiracy were thus "otherwise extensive," and it is clear from the admitted facts that Gonzales organized, supplied, and directed much of the criminal activity.  *See, e.g., United States v. Antillon-Castillo*, 319 F.3d 1058, 1059 (8th Cir. 2003) (court finding that drug distribution conspiracy involved five or more participants or was otherwise extensive was unnecessary prior to upward adjustment for being a leader or organizer where defendant conceded at his change-of-plea hearing that he was part of a conspiracy to transport drugs that involved himself and at least four others); *United States v. Lizarraga*, 682 F. App'x 529, 532-33 (8th Cir. 2017) (unpublished) (factual stipulations set forth in plea agreement indicated that the drug conspiracy involved five or more participants, even though some associates were not identified by name); *United States v. Sarabia-Martinez*, 276 F.3d 447, 452 (8th Cir. 2002) (organizer or leader enhancement was proper, even though criminal activity involved fewer than five participants, where the criminal activity was otherwise extensive; defendant recruited and controlled one individual, who transported drugs for him from California to Minnesota, traveled to California to meet with drug suppliers and arrange for drug shipments, and decided what drugs to bring to Minnesota, when to bring them, and how to import them).

Gonzales suggests he was simply "a middle-man between the supplier of drugs in Mexico and the head of the DTO [drug trafficking organization], Gamboa," and that the enhancement is meant only for "king-pins."  (ECF No. 43, p. 4; ECF No. 39, p. 7).  Titles such as "kingpin" or "boss" are not controlling, and the adjustment for being an organizer or leader is intended to reflect relative responsibility compared to other participants in the crime.  *Rodriguez*, 112 F.3d at 377; see also USSG § 3B1.1, Application Note 4, Background.  Here, the stipulated facts clearly establish

Gonzales' supplied methamphetamine and exercised control over Gamboa's criminal activities, and that he played a greater role in the offense compared to other relatively lesser involved participants in the drug distribution conspiracy.

Gonzales' reliance on *United States v. Ortiz-Rodriguez*, 461 F. App'x 525 (8th Cir. 2012) (unpublished), to support his argument that at most a two-level enhancement should apply, is also misplaced. (ECF No. 43, pp. 5-6). Ortiz-Rodriguez recruited a woman to sell methamphetamine for him, and he enlisted his brother to deliver approximately two ounces of methamphetamine to the woman. The District Court determined that a two-level enhancement under USSG § 3B1.1(c) was appropriate. Finding that Ortiz-Rodriguez had recruited others into the conspiracy, even if he did not directly control them, the Eighth Circuit Court of Appeals upheld the District Court's determination, noting that to be subject to a role enhancement a defendant need only recruit a participant into a conspiracy. *Id*. at 527. In contrast, Gonzales arranged for large quantities of methamphetamine to be transported from a supplier in the Dallas, Texas area into Arkansas, and he controlled several important aspects of the overall drug conspiracy, including: the arrangements for when the methamphetamine would be available to pick up and transport; where and from whom the drugs were to be picked up; the price to be paid for the drugs; and, the timing and collection of payment for drug related debt. Gonzales served as a supplier for an extensive drug trafficking organization in the Fort Smith, Arkansas area, and he controlled and directed the activities of the head of that drug trafficking organization, Gamboa. While a two-level enhancement was proper in *Ortiz-Rodriguez*, the four-level enhancement imposed on Gonzales under USSG § 3B1.1(a) as an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive was supported by substantial evidence.

-14-

Based on the undisputed facts, it would have been futile for Gonzales' counsel to make an objection to application of the four-level organizer or leader enhancement.  It cannot be ineffective assistance not to raise a meritless argument.  *Larson v. United States*,  905 F.2d 218, 219 (8th Cir. 1990).  Accordingly, Gonzales' ineffective assistance of counsel claim fails because counsel's performance was not constitutionally deficient.

Since Gonzales has failed to show that his counsel's performance was deficient regarding this issue, there is no need to address the second *Strickland* prong of prejudice. *Walker*, 324 F.3d at 1040 (if a movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim).  Even so, because there is substantial evidence to support application of the four-level enhancement, Gonzales could not have been prejudiced by his counsel's failure to make an objection, as there is no "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different ... [,] a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome." *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 694).

Gonzales' second ground for relief should be denied.

### 3.  Failure to Argue for a Downward Variance at Sentencing

In his third ground for relief, Gonzales essentially restates his first two grounds for relief and argues that his counsel was ineffective for failing to request a downward variance under the factors of 18 U.S.C. § 3553(a) at sentencing.  (ECF No. 39, pp. 7-11).  He argues that the nature of the offense "was a low-level, non-violent drug conspiracy"; that he is a first-time offender and "played the role of middleman providing methamphetamine to the DTO's owner, Gamboa"; that he is the father of four children with whom he has a good relationship; that despite having a limited education,

he has provided for his partner and their children "by working hard, even sacrificing his own safety and comfort by coming to the United States illegally in order to obtain work"; and, that the criminal conduct which he engaged in was aberrant behavior. (ECF No. 39, p. 8). The Government contends that Gonzales' written Plea Agreement precluded him from making such an argument at sentencing. (ECF No. 42, pp. 13-14).

The written Plea Agreement signed by Gonzales provides the following:

> "The United States and the Defendant agree that a sentence of imprisonment within the advisory guideline range as determined by the court is a reasonable sentence in this case, **agree not to seek a variance from the advisory guidelines range for imprisonment**, and agree to recommend that the court sentence the Defendant to a term of imprisonment within the advisory guideline range. The parties acknowledge that the Court is not bound by the recommendation and may impose any sentence authorized by law."

(ECF No. 18, ¶ 17) (emphasis added).

By signing the Plea Agreement, Gonzales acknowledged that he had carefully reviewed every part of it with his counsel; that he fully understood the agreement; that no promises, agreements, understandings, or conditions had been made or entered into except those set forth in the Plea Agreement; that he was satisfied with the legal services provided by defense counsel in connection with the Plea Agreement and matters related to it; and, that he entered into the Plea Agreement freely and voluntarily. (ECF No. 18, ¶ 25).

The United States and Gonzales agreed that a sentence within the advisory guideline range would be a reasonable sentence in this case, and both agreed not to seek a variance from the advisory guidelines range. The promise not to seek a variance was mutually binding: it effectively prohibited the Government from seeking an upward variance while also precluding Gonzales from seeking a

-16-

downward variance.  Promises made in a plea agreement are binding on both parties.  *See United States v. His Law*, 85 F.3d 379 (8th Cir. 1996) (per curiam); *see also Schlichting v. United States*, 355 F. App'x 84 (8th Cir. 2009) (unpublished) (defendant bound by stipulation to sentencing enhancements in plea agreement; no ineffective assistance of counsel in abiding by the plea agreement's terms).

Because Gonzales was bound by his agreement not to seek a variance from the advisory guideline range, Gonzales cannot show that his counsel acted unreasonably in complying with the terms of the Plea Agreement, nor can it be found that Gonzales was prejudiced by counsel's failure to seek a variance.

Gonzales' third ground for relief should be denied.

### C.  No Evidentiary Hearing Is Warranted

A movant is not entitled to an evidentiary hearing on a § 2255 motion if "the motion and the files and records of the case conclusively show that the [movant] is entitled to no relief."  *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997), quoting from *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985).  Such are the circumstances in this case where Gonzales' claims are procedurally barred, not cognizable under § 2255, contrary to the express terms of his Plea Agreement, and otherwise lack merit.  Accordingly, the undersigned recommends the summary dismissal of Gonzales' § 2255 motion without an evidentiary hearing.

### D.  No Certificate of Appealability is Warranted

A Certificate of Appealability may issue under 28 U.S.C. § 2253 only if the applicant has made a substantial showing of the denial of a constitutional right.  A "substantial showing" is one demonstrating that reasonable jurists could debate whether the petition should have been resolved

in a different manner or the issues presented deserved further proceedings even though the petitioner did not prevail on the merits in the court considering his case at present. *Slack v. McDaniel*, 529 U.S. 473 (2000). Gonzales has not made a substantial showing of the denial of a constitutional right, and a Certificate of Appealability should be denied.

### III. Conclusion

For the reasons and upon the authorities discussed above, Gonzales' Sentencing Guidelines claim has been procedurally defaulted, is not cognizable in this § 2255 proceeding, and is otherwise wholly unsupported by the record in this case. Gonzales' claims of ineffective assistance of counsel likewise find no support in the record. It is recommended that Gonzales' Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No. 38) be **DISMISSED with PREJUDICE**. It is further recommended that a request for a Certificate of Appealability be denied.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely written objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 29th day of March, 2018.

/s/ *Mark E. Ford*
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE